**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

FRED LEE PERRY,

    Plaintiff,

    v.                                                         Case No. 07-C-767

JEANETTA JOHNSON, and
REGENCY JANITORIAL
SERVICES INC.,

    Defendant.

## DECISION AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### NATURE OF CASE

On August 27, 2007, the plaintiff, who is proceeding pro se, filed this action alleging that defendant Regency Janitorial Services, Inc. (Regency) discriminated against him on the basis of race in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII) and 42 U.S.C. § 1981 when defendant Regency failed to hire him several times between 1999 and 2005. Additionally, the plaintiff claims that defendant Regency discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621 et seq. (ADEA) when they failed to hire him. The plaintiff also asserts a 42 U.S.C. § 1981 claim against defendant Jeannetta Johnson, an employee of Regency.

In a decision and order issued on June 5, 2008, the court granted the defendant's motion to dismiss the plaintiff's age discrimination claim under the ADEA and the Title VII claims against defendant Regency for failure to hire him in 1999, 2002 and 2003. The

plaintiff's § 1981 claims against the defendants alleging discriminatory actions in 1999 and 2002 were also dismissed. The plaintiff's Title VII discrimination claim based on a failure to hire him in 2005 was not dismissed. The plaintiff's § 1981 discrimination claims against defendants Johnson and Regency for failure to hire him in 2003 and 2005 also were not dismissed.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

The defendants filed a motion for summary judgment and the plaintiff filed his response in opposition to the motion. The plaintiff has not filed a response to the defendant's proposed findings of fact as required by Civil Local Rule 56.2(b) (1). The motion is fully briefed and will be addressed herein.

## **MOTION FOR SUMMARY JUDGMENT**

### **Standard for Summary Judgment**

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are

- 2 -

those that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant.

In determining whether a genuine issue of material facts exists, the court must consider the evidence in the light most favorable to the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains the burden of producing evidence which would support a reasonable jury verdict. See Celotex Corp., 477 U.S. at 324; Fed R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings. Larsen v. City of Beloit, 130 F.3d 1278, 1282 (7th Cir. 1997). "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Moreover, a genuine issue of material fact is not shown by the mere existence of "*some* alleged factual dispute between the parties," Anderson, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586. Rather, a genuine issue of material fact exists only if "a fair minded jury

- 3 -

could return a verdict for the [nonmoving party] on the evidence presented." Anderson, 477 U.S. at 252.

Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n. 2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56[e]). Federal Rules of Civil Procedure 56(e) provides in pertinent part:

> A supporting or opposing affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.

See also, Halloway v. Milwaukee County, 180 F.3d 820, 827 n.9 (7th Cir. 1999). Affidavits based on "information and belief" – facts that the affiant believes are true, but which the affiant does not know are true – are not proper. Toro Co. v. Krouse, Kern & Co. Inc., 827 F.2d 155, 162-63 (7th Cir. 1987).

## **RELEVANT UNDISPUTED FACTS**[1]

The plaintiff, Fred Lee Perry, initially applied for employment with defendant Regency Janitorial Services, Inc. [Regency] in 1999. He also completed applications for employment with the defendant in 2002, 2003 and 2005. See Affidavit of Jeanette Johnson (Johnson Aff.), Exh. 1000 (1999). Heidi Schaible was the person who hired the plaintiff. See Johnson Aff., Exhs. 1001 (2002); 1002 (2003); 1003 (2005). The plaintiff did not complete an application for employment in 2004.

---

[1] The relevant undisputed facts are taken from the defendant's proposed finding of facts, from the facts in the plaintiff's verified complaint to the extent they are not disputed, and from the relevant, undisputed portions of the plaintiff's submissions in opposition to the summary judgment motion.

- 4 -

**Regency Policies and Procedures**

Defendant Regency advertises its job openings in a variety of newspapers and community papers, including the Milwaukee Journal Sentinel, 50 Plus News Magazine, CNI Newspaper, Waukesha Freeman, El Conquistador, and Hometown Publications. Defendant Regency also posts job openings and conducts on-site interviews at numerous organizations throughout the city, such as Goodwill Industries and various job centers.

Defendant Regency has a policy of not hiring applicants who fail to show up for their first day of work, as well as a policy of terminating employees who are a "no-call, no-show" on three consecutive days. As part of its policy, defendant Regency considers an employee who is a "no-call," "no-show" for three consecutive days to have voluntarily quit his or her employment. Defendant Regency also has a "three strikes" policy. Defendant Regency attempts to contact an applicant three times, but if the applicant does not return defendant Regency's phone calls after three attempts, the company assumes the applicant is not interested in employment. It is also part of its policy to make three attempts to contact a new hire who fails to attend training. Defendant Regency sends a new hire who fails to attend training a "no call, no show" letter if its attempts to contact the person are unsuccessful. Only applicants who are hired attend training. New hires complete their employment paperwork during training.

It is defendant Regency's policy not to make an identification badge for someone unless that person is hired. The company prints a new hire's identification badge during training and newly-hired employees receive their identification badge on their start date after training. Defendant Regency keeps the identification badges of terminated or "no call," "no show" employees in the respective employee's personnel file.

- 5 -

An Employee Information Sheet is prepared only for applicants who are hired. Only applicants who are hired receive the following documents: General Rules, General Cleaner's Property List, Paycheck Policies, Employment at Will Agreement, ID Policy, Time Clock Policies and the Background Check form. New hires are required to sign the General Cleaner's Property List, the Paycheck Policies, the Employment at Will Agreement, the ID Policy, the Time Clock Policies, and the Background Check form. Only applicants who are hired complete a W-4 form. Checkmarks on the General Cleaner's Property List mean that the new hire understands that he is responsible for those items if anything happens to them. New hires do not actually receive the items on the General Cleaner's Property List until the first day of work.

Defendant Regency sends rejected applicants a form letter. The body of the form letter is already typed and only the applicant's name, address, city, and state need to be handwritten on the form letter.

**1999 Application**

The plaintiff states in his verified complaint that he applied for a job with defendant Regency, but he denies that he was hired in 1999. However, the defendants submitted various records relating to the plaintiff's employment as part of its findings of fact in support of its motion for summary judgment. The plaintiff has not responded to or addressed these documents. The plaintiff was provided with a copy of Civil Local Rule 56.1, Summary Judgment Motions in Pro Se Litigation, which states in relevant part:

(a)   If a party is proceeding pro se in civil litigation, and the opposing party files a motion for summary judgment, counsel for the movant must comply with the following procedure:

- 6 -

> (1) The motion must include a short and plain statement that any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion.

Since the plaintiff did not submit his own affidavit or other admissible evidence contradicting the defendants' assertions, the defendants' documentary exhibits are accepted as true.

On May 18, 1999, the plaintiff completed his employment paperwork at defendant Regency. On that date, he signed documents indicating that he was an employee at will (Exh. 1007) and acknowledged that he had read and understood defendant Regency's General Rules. (Exh. 1009). He also signed the General Cleaners Property List acknowledging receipt of an I.D. badge, apron, keys, and security cards. (Exh. 1010). Exhibit 1016 is a copy of the plaintiff's training examination conducted and completed on May 20, 1999. (Exh. 1016). The plaintiff's identification badge was made during his May 1999 employment training. In addition, during his May 1999 employment training, the plaintiff received and signed the following additional documents: 1999 W-4 form, Regency's ID Policy, Paycheck Policies, Time Clock Policies and the Background Check form.

The plaintiff was to begin work on June 2, 1999, and was to meet his supervisor at defendant Regency's office at 9:00 a.m. on that date. The plaintiff never showed up for his first day of work and defendant Regency then terminated the plaintiff's employment.

**2002 Application**

Defendant Jeanette Johnson, who has been the Human Resources Director for defendant Regency since 2000, hired the plaintiff in 2002. She told the plaintiff to attend training on April 8, 2002, but he did not attend the training. Defendant Johnson attempted

- 7 -

Case 2:07-cv-00767-PJG   Filed 12/28/09   Page 7 of 17   Document 84

three times to contact the plaintiff regarding his absence at training, but the plaintiff never contacted her regarding his absence. Defendant Johnson assumed that the plaintiff was no longer interested in employment with defendant Regency and sent him a letter to that effect on or about April 11, 2002. Her letter was consistent with defendant Regency's practice regarding new hires who fail to attend training. The plaintiff did not respond to defendant Johnson's letter. Defendant Johnson classified the plaintiff as a "pass" to indicate that he was not eligible to be hired and filed his materials away. When defendant Johnson hired the plaintiff in 2002, she did not know that Ms. Schaible had hired the plaintiff in 1999 and that he had failed to show up for work.

**2003 Application**

In 2003, defendant Regency's Human Resources Department reorganized its personnel files. When the personnel files were reorganized, defendant Johnson discovered that the plaintiff had applied for a job in 1999, was hired by Ms. Schaible, and had failed to show up for work. When the plaintiff applied for a job again in 2003, defendant Johnson remembered that he had applied in 2002 and had failed to attend training. She classified the plaintiff's 2003 application as a "pass" to indicate that he did not meet defendant Regency's hiring criteria and that she would not hire him. Defendant Johnson did not hire the plaintiff in 2003 because he did not show up for training in 2002. Defendant Johnson's letter to the plaintiff indicating that his skills were impressive and that his application would be kept on file was a form letter that defendant Regency sent to all rejected applicants. Defendant Johnson, who is African-American, would not have hired the plaintiff in 2002 had she known about his 1999 failure to show up for work.

**2005 Application**

The plaintiff, who had prior experience, applied for a position with the defendant in July 2005. While he was completing his application, the plaintiff states that Regency employees were assisting Hispanics who could not read the application because it was in English. Defendant Johnson did not hire the plaintiff in 2005 when he applied because she remembered that the plaintiff had applied in 2002 and was a "no call," "no show." Defendant Johnson's decision not to hire the plaintiff in 2003 and 2005 was based on defendant Regency's policy of not hiring applicants who have previously failed to show up for their first day of work. The plaintiff states that he was never informed of defendant Regency's policy of not hiring an applicant who did not show up for work.

## ANALYSIS

In moving for summary judgment, the defendants state that the plaintiff has failed to establish a prima facie case of discrimination based on race under Title VII when defendant Regency failed to hire him. Specifically, they assert that the plaintiff cannot establish discrimination based on disparate treatment or disparate impact. The defendants also maintain that there are no genuine issues of material fact regarding the plaintiff's apparent disparate impact claim and that "the plaintiff cannot prove that Regency's advertising practices caused a statistical disparity in Regency's workforce." (Defendants' Brief Supporting their Motion for Summary Judgment at 25). Defendant Regency argues that even if the plaintiff establishes a prima facie case, the plaintiff cannot show that its legitimate, non-discriminatory reasons for its action in not hiring the plaintiff were merely a pretext for discrimination. The

defendants also assert that the plaintiff's § 1981 claim fails for the same reasons as his Title VII claim – the plaintiff cannot prove discrimination based on his race.

In opposing the motion, the plaintiff claims that defendant Regency discriminated against him on the basis of his race when it refused to hire him because he was African-American. The plaintiff also maintains that the higher number of Hispanics hired by defendant Regency show that it had no intention of hiring a qualified African- American, but only to hire unskilled Hispanics. The plaintiff contends defendant Regency's reason for not hiring him is merely a pretext for discrimination.

### Title VII and Section 1981

Title VII of the United States Code makes it unlawful for an employer to ". . . discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or color . . .." 42 U.S.C. § 2000e-2(a)(1). Section 1981 of Title 42, United States Code, addresses racial discrimination in contractual relationships. The statute, which was amended by the Civil Rights Act of 1991, provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . .." 18 USC § 1981(a). The statute defines the making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 USC § 1981(b). Although § 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical. Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 940 (7th Cir. 1996). Thus, in analyzing a §1981 claim, the court applies the same standard as in a Title VII case. Hardin

- 10 -

v. S.C. Johnson &Son, Inc. 167 F.3d 340, 347 n.2 (1999).  Accordingly, the court will analyze the Title VII and §1981 claims  together.  See Lalvani v. Cook County, Illinois, 269 F.3d 785, 789 (7th Cir. 2001).

A plaintiff in a discrimination case may prove intentional discrimination by using either the "direct method" or the "indirect method."  See Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004).  "Evidence which in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion amounts to direct proof of discrimination."  Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997).  Thus, under the direct method, "a plaintiff must come forward with direct or circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'"  Burks v. Wisconsin Dept. of Transp., 464 F.3d 744, 751 (7th Cir. 2006) (quoting Blise v. Antaramian, 409 F.3d 861, 866 [7th Cir. 2005]).  The indirect method requires that the plaintiff apply the burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).  See also, Kirk v. Federal Property Management Corp., 22 F.3d 135, 138 (7th Cir. 1994).

Initially, the burden is on the plaintiff to establish a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.   To establish a prima facie case of discrimination under Title VII, the plaintiff must show: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications," Id. or that "the position was filled with a person not within the protected class."

Millbrook v. IBP, Inc. 280 F.3d 1169, 1174 (7th Cir. 2002) (quoting Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 765 [7th Cir. 2001]).

To establish a prima facie case under § 1981, the plaintiff must show that 1) he is a member of a racial minority, 2) the defendant had an intent to discriminate on the basis of race, and 3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). Morris v. Office Max, Inc., 89 F.3d 411, 413-14 (7th Cir. 1996) (citing Green v. State Bar of Texas, 27 F.3d 1083, 1086 [5th Cir. 1994]; Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 [2nd Cir. 1993]). Section 1981 "like the Equal Protection Clause, can be violated only by purposeful discrimination." Franklin v. City of Evanston, 384 F.3d 838, 848 (7th Cir. 2004) (quoting Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 [1982]). A claim of race discrimination under § 1981 requires a showing of discriminatory treatment and cannot be supported by proof of disparate impact. Franklin, 384 F.3d at 848.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection. McDonnell Douglas, 411 U.S. at 802; Burks, 464 F.3d at 751. Finally, if the defendants produce a legitimate, nondiscriminatory reason for the employment decision, the burden shifts back to the plaintiff to show such reason was pretextual. Id.; see also, Scaife v. Cook County, 446 F.3d 735, 739-40 (7th Cir. 2006).

The plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256; see also, Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir. 2001). The court

- 12 -

must look to "whether the employer's reasons for its decision are honest and genuinely motivated." Burks, 464 F.3d at 754. The court is "not concerned with whether or not the employer's actions were 'mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons.'" Id. (quoting Jordan v. Summers, 205 F.3d 337, 343 [7th Cir. 2000]). Ultimately, the plaintiff must establish that he would not have been fired "but for" his race. Billups, 922 F.2d at 1301.

In this case, the plaintiff is proceeding under the indirect method of proof. The plaintiff has met the first element of a prima facie case as there is no dispute that he is a member of a protected class. With respect to the second element, the defendants assert that the plaintiff cannot demonstrate that he was qualified for the job he was seeking because he did not meet defendant Regency's hiring criteria. Specifically, the defendants state that it has a policy of not hiring an applicant who previously had been hired and who failed to show up for work.

The undisputed facts establish that the plaintiff was hired by defendant Regency in 1999, but failed to show up for the first day of work. Defendant Johnson hired the plaintiff in 2002, after he again applied for a job. At that time, defendant Johnson was not aware that the plaintiff had been hired in 1999 and never reported for work. The plaintiff failed to show up for defendant Regency's training program after he was hired in 2002. Based on the facts before the court, the plaintiff has not established that the second element of a prima facie case – namely, that he met defendant Regency's qualifications for the job when he sought employment in 2005. He was not hired by defendant Regency because he did not meet its qualifications for the job.

The plaintiff argues that defendant Regency continued to seek other applicants and hired less qualified Hispanics after it rejected his application. He asserts that defendant

- 13 -

Regency hired significantly more Hispanics than African Americans. The plaintiff attempts to show that defendant Regency filled the position after he was rejected by citing to documents containing names of employees at defendant Regency. See Plaintiff's Motion for an Order Denying the Defendants' Motion for Summary Judgment, Exh. 2 and other unnumbered exhibits. The documents – Employee Summary Report, Employee Salary History and Seniority Report – do not list the race of the employees. Rather, it appears that the plaintiff has designated the individuals on the list as either Hispanic or African American by reviewing the individuals' last names. The plaintiff has presented no evidence that the position he had applied for was filled by a less qualified person who is not within the protected class. Thus, he has not met the requirement of the fourth element of a prima facie case by showing that any individual outside the protected class was treated more favorably. Finally, the plaintiff has not presented evidence to establish that the defendants intentionally discriminated against him because of his race. Morris, 89 F.3d at 413-14.

Even if the court were to conclude that the plaintiff had established a prima facie case of discrimination under Title VII and § 1981, the plaintiff has not presented any evidence to show that the defendants' rationale for not hiring him was pretextual. Defendant Regency has a policy of not hiring applicants who previously have been hired but fail to show up for their first day of work. The undisputed facts show that the plaintiff was hired in 1999, but failed to report for work on the first day. Nonetheless, the plaintiff was hired again in 2002 because defendant Johnson was unaware of his prior employment at Regency. When the plaintiff failed to appear for training in 2002 as required, defendant Johnson made three attempts to contact the plaintiff about his absence. The plaintiff never returned her calls. In accordance with its "no show," "no hire" policy, the plaintiff was not eligible to be hired. The plaintiff has failed to show that

defendant Regency's explanation for not hiring him is "unworthy of credence." Burdine, 450 U.S. at 256.

While the complaint is not entirely clear, it appears that the plaintiff has made a disparate impact claim under Title VII as well. "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 987 (1988).

To prove a prima facie case of disparate impact, the plaintiff must first specifically isolate the employment practices used by the defendant company that are allegedly responsible for any observed statistical disparities. Id. at 494. Second, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. at 994-95  Statistics alone can bring about a prima facie case of discrimination. Wards Cove Packing Co., v Atonio, 490 U.S. 642, 650-51 (1989). However, the statistics must be enough to prove a line of causation between the practice in question and the alleged discrimination. Watson, 487 U.S. at 994-95. To do this, there must be statistics that show the number of eligible candidates against the number of people hired for the position, not just the mere disparity in the actual workforce. Gilty v. Village of Oak Park, 919 F.2d 1247, 1254 (7th Cir. 1990)(citing Wards Cove, 490 U.S. at 650).

If a prima facie case of discrimination can be made by the plaintiff, then the burden shifts to the defendant to prove that the employment practice is a business necessity. 42 U.S.C. 2000e-2(k)(1)(A)(I).  Unlike disparate treatment cases, a plaintiff need not prove discriminatory intent, but, instead must show "that the policies and practices at issue have a

substantially disproportionate impact on the protected class." Gilty, 919 F.2d at 1254 (quoting Griffin v. Board of Regents, 795 F.2d 1281, 1287 [7th Cir. 1986]).

The plaintiff asserts that defendant Regency's advertising practices have the effect of favoring Hispanic applicants to the detriment of African Americans. Specifically, the plaintiff contends that posting available jobs in the Hispanic community newspapers and other publications and not in the Milwaukee Courier, the black community publication, caused the disparity.

He points out that defendant Regency hires more Hispanics than African Americans and cites to the defendants' answer to his interrogatory about company hires. Defendant Regency stated that between 2003 and 2004, it hired 207 Hispanics and 15 African Americans. As noted, the plaintiff also submitted documents listing employees at defendant Regency and he concluded that individuals were either Hispanic or African American based on the employees' last names.

Although the plaintiff has presented numbers showing that defendant Regency has hired more Hispanics than African Americans in 2003-2004, he has not presented "statistical evidence of a kind and degree sufficient to show that [its advertising policy] has caused the exclusions of applicants for jobs . . . because of their membership in a protected group." Watson, 487 U.S. at 994-95. Moreover, "underrepresentation statistics cannot make out a prima facie case of disparate impact." Gilty, 919 F.2d at 1254 (citing Cox v. City of Chicago, 868 F.2d 217, 223-23 [7th Cir. 1989]) (other citation omitted). "In disparate impact cases, it is eligibility rate, not underrepresentation, that is telling." Gilty. 919 F.2d at 1254. In this case, the plaintiff has not shown that the policies and practices at issue have had a "substantially

- 16 -

disproportionate impact" on African Americans. See Id. Therefore, the plaintiff has not established a prima facie case of discrimination based on disparate impact.

In sum, for the reasons stated herein, the plaintiff has not established that the defendants have discriminated against him on the basis of his race under either Title VII or § 1981. Accordingly, defendants Regency and Johnson's motion for summary judgment on the plaintiff's claims will be granted.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **granted**. (Docket #65).

**IT IS ALSO ORDERED** that the plaintiff's motion to deny the defendants' motion for summary judgment be and hereby is **denied**. (Docket #83).

**IT IS FURTHER ORDERED** that the action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of December, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge